UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL DIVISION

CASE NO.:

BENJAMIN GUERRERO,

      Plaintiff,

v.

CITY OF CORAL GABLES, a political
subdivision of the State of Florida, LEANDRO
IZQUIERDO, a resident of the State of Florida,
and ALVARO ESCALONA, a resident of
the State of Florida,

      Defendants.
_____/

**COMPLAINT**

Plaintiff, BENJAMIN GUERRERO ("Mr. Guerrero"), brings this Complaint against THE CITY OF CORAL GABLES ("Coral Gables"), LEANDRO IZQUIERDO ("Officer Izquierdo"), and ALVARO ESCALONA ("Officer Escalona"), and allege the following:

**THE PARTIES, JURISDICTION, AND VENUE**

At all times material to this action:

1. Benjamin Guerrero was a citizen of the State of Florida and a resident of Miami-Dade County, Florida. He was also the Deputy Chief of Police with the Florida International University Police Department.

2. Defendant, Coral Gables, was a public entity incorporated under the laws of the State of Florida, and is responsible for establishing, organizing, operating and policing all areas in the City of Coral Gables, Florida.

3. Defendant, Leandro Izquierdo, was a resident of the State of Florida and a police officer with the Coral Gables Police Department.

4. Defendant, Alvaro Escalona, was a resident of the State of Florida and a police officer with the Coral Gables Police Department.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Mr. Guerrero respectfully requests that this Court exercise supplemental jurisdiction over his state law claim against Coral Gables pursuant to 28 U.S.C. § 1367(a) because it arises out of the same operative nucleus of facts. Venue is proper because the events giving rise to this claim all occurred within Miami-Dade County, Florida.

## THE FACTS GIVING RISE TO THE CLAIM

**Background.**

6. Mr. Guerrero has served his community for over *35 years* as a law enforcement officer.

7. He began his career with the Miami-Dade Police Department ("MDPD") in 1982.

8. Throughout his entire career with MDPD, Mr. Guerrero has served in several distinguished positions, including:

   i. Special Response Team ("SRT") Officer – 1982 to 1993;

   ii. Narcotics Detective – 1993 to 1999;

   iii. Public Corruption Investigations Detective – 1999 to 2007.

9. Mr. Guerrero attended law school at night while working as a police detective and received his Juris Doctorate degree from Florida International University School of Law in 2007.

10. After law school, Mr. Guerrero accepted a position with the Miami-Dade Police Department Legal Bureau as a Police Legal Advisor from 2007 to 2010.

11. From 2011 to 2013, Mr. Guerrero worked as a Senior Attorney and Anti-Human Trafficking Coordinator for the Department of Children and Families.

12. In April of 2013, Mr. Guerrero accepted a position with the Florida International University Police Department as Assistant Chief of Police.

13. Mr. Guerrero maintained his position as Assistant Chief until January of 2017, when he was elevated to Deputy Chief of Police - a position that is second in command.

14. In the fall of 2018, Mr. Guerrero was hired by FIU's Department of Criminal Justice as an Adjunct Professor.

15. Mr. Guerrero has received numerous accolades and awards, and he was chosen to attend the FBI National Academy in 2016.

16. Mr. Guerrero has been admitted to practice law in the Southern District of Florida, is a member of the Florida Bar, and is a Certified Police Instructor.

17. Mr. Guerrero worked tirelessly, many times under very difficult circumstances, to ensure that officers acted with integrity and honesty when engaging and serving their community.

18. Mr. Guerrero has also trained law enforcement officers from numerous agencies on a variety of topics including, but not limited to, de-escalation, use of force, and ethics.

19. Before this incident, and as described above, Mr. Guerrero honorably served his community and did not have one blemish on his record.

**November 16, 2018 Incident at Hillstone.**

20. Mr. Guerrero never imaged what would happen to him on Friday, November 16, 2018.

21. Mr. Guerrero traveled to Hillstone's Restaurant located on Miracle Mile in the City of Coral Gables.

22. Because of his position, Mr. Guerrero took a Lyft ride from his home to the restaurant.

23. Mr. Guerrero does not consume alcohol and operate an automobile, nor does he carry his firearm or badge when he enters an establishment that sells alcoholic beverages. Mr. Guerrero believes that this is the best practice for someone in his position.

24. While at Hillstone, Mr. Guerrero noticed three women, Maria Minnis, Olivia Minnis and Tara Banks, whom he had previously met at Hillstones.

25. They asked Mr. Guerrero to join them for dinner and drinks.

26. It is important to note that the women are merely acquaintances, as Mr. Guerrero had only seen them at Hillstone and had no contact with any of them outside of Hillstone.

27. As seen on Hillstone's surveillance camera, Mr. Guerrero's party was sitting at the bar area.

28. At a certain point, the bartender "cut-off" Ms. Banks' drinks because she had reached Hillstone's conservative drink policy.

29. Ms. Banks did not understand why she was being cut-off and asked to speak to the manager.

30. When the manager arrived, they asked the manager about Hillstone's policy of terminating alcohol service.

31. At no time was anyone disorderly, disrespectful, aggressive or threatening.

32. In fact, the surveillance video shows that none of the patrons paid any attention to what was going on.

33. At the conclusion of the conversation, the manager left the area.

34. The surveillance video shows that there was absolutely no need for police involvement.

35. Mr. Guerrero and his party were sitting quietly at the bar minding their own business.

36. In fact, immediately before the incident, Mr. Guerrero was sitting on a bar stool, facing the bar, and was not acting in an aggressive or threatening manner.

37. Nevertheless, two Coral Gables police officers, Izquierdo and Escalona, unnecessarily escalated the situation.

38. Officer Izquierdo meandered his way through the women and approached Mr. Guerrero.

39. Officer Izquierdo then raised his finger to his mouth in a manner consistent with telling someone to be quiet – even though Mr. Guerrero was not speaking to anyone at the time.

40. Without provocation, Officer Izquierdo abruptly grabbed Mr. Guerrero around his waist and threw him off the barstool.

41. Mr. Guerrero was completely in shock.

42. It is important to pause and note that, at this point: (a) neither officer had said anything to Mr. Guerrero before throwing him off the barstool; (b) nobody from Hillstone had asked Mr. Guerrero to leave the premises; and (c) Mr. Guerrero had not committed a crime, nor did any officer have reason to believe that he did.

43. After being thrown off the barstool, Mr. Guerrero struggled to keep his balance.

44. Officers Izquierdo and Escalona then pushed him against the bar.

45. Mr. Guerrero immediately put his hands in the air with his palms facing forward to show the officers that he was not resisting or fighting them.

46. Officer Escalona then grabbed Mr. Guerrero's left hand, and both officers pulled Mr. Guerrero outside of the restaurant onto a sidewalk area.

47. The Coral Gables officers handcuffed Mr. Guerrero without incident.

48. Officer Izquierdo then "perp walked" Mr. Guerrero back through the crowded restaurant, which was completely unnecessary, and placed him in front of the restaurant while people walked by and gawked.

49. The officers falsely arrested Mr. Guerrero for resisting arrest with violence, battery on a law enforcement officer, and disorderly conduct.

50. The officers transported Mr. Guerrero to jail where he was booked, strip searched, and placed in an isolation cell.

51. Mr. Guerrero's mugshot was plastered all over local media outlets as if he were a criminal.

52. The negative publicity tarnished his career and hard-earned reputation in the community.

53. Because of this incident, the FIU Police Department demoted Mr. Guerrero to the position of Major, which resulted in a significant decrease in pay.

54. In order to prove his innocence, Mr. Guerrero subjected himself to two polygraph examinations.

55. One polygraph showed a 96% likelihood that Mr. Guerrero was being truthful about his version of the events; the other polygraph showed a 97% likelihood that Mr. Guerrero was being truthful.

56. Mr. Guerrero also provided the State with a copy of the video, which captured the entire incident.

57. Simply put, Officer Izquierdo and Officer Escalona statements on the arrest affidavit could not be reconciled with the unbiased video footage and the polygraph evaluations.

58. Accordingly, on January 29, 2019, the Miami-Dade State Attorney's Office *no-actioned* the criminal case against Mr. Guerrero.

59. As a result of this incident, Mr. Guerrero has suffered economic and non-economic damages, including, but not limited to, lost wages, pain and suffering, mental anguish, emotional distress, and legal fees, which are on-going and continuous.

### COUNT I: FOURTH AMENDMENT VIOLATION – FALSE ARREST BY LEANDRO IZQUIERDO

60. Mr. Guerrero re-alleges the allegations contained in paragraphs 1-59 of this Complaint.

61. Mr. Guerrero brings this action pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by Coral Gables Police Officer Leandro Izquierdo.

62. Officer Izquierdo intentionally committed an act that violated Mr. Guerrero's Fourth Amendment right not to be arrested or imprisoned without probable cause.

63. Officer Izquierdo's conduct caused injury to Mr. Guerrero.

64. Officer Izquierdo was acting under color of state law as a police officer when he committed such acts.

65. No reasonable police officer could have believed that probable cause existed to arrest or imprison Mr. Guerrero for a criminal offense.

**COUNT II:  FOURTH AMENDMENT VIOLATION –
FALSE ARREST ALVARO ESCALONA**

66. Mr. Guerrero re-alleges the allegations contained in paragraphs 1-59 of this Complaint.

67. Mr. Guerrero brings this action pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by Coral Gables Police Officer Alvaro Escalona.

68. Officer Escalona intentionally committed an act that violated Mr. Guerrero's Fourth Amendment right not to be arrested or imprisoned without probable cause.

69. Officer Escalona's conduct caused injury to Mr. Guerrero.

70. Officer Escalona was acting under color of state law as a police officer when he committed such acts.

71. No reasonable police officer could have believed that probable cause existed to arrest or imprison Mr. Guerrero for a criminal offense.

**COUNT III:  FOURTH AMENDMENT VIOLATION –
EXCESSIVE FORCE LEANDRO IZQUIERDO**

72. Mr. Guerrero re-alleges the allegations contained in paragraphs 1-59 of this Complaint.

73. Mr. Guerrero brings this action pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by Coral Gables Police Officer Leandro Izquierdo.

74. Officer Izquierdo intentionally committed an act that violated Mr. Guerrero's Fourth Amendment right to be free from excessive force during an arrest.

75. The amount of force used against Mr. Guerrero by Officer Izquierdo and other officers was unreasonable and excessive under the circumstances.

76. Officer Izquierdo was acting under color of state law as a police officer when he committed such acts.

### COUNT IV: FOURTH AMENDMENT VIOLATION – EXCESSIVE FORCE – ALVARO ESCALONA

77. Mr. Guerrero re-alleges the allegations contained in paragraphs 1-59 of this Complaint.

78. Mr. Guerrero brings this action pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by Coral Gables Police Officer Alvaro Escalona.

79. Officer Escalona intentionally committed an act that violated Mr. Guerrero's Fourth Amendment right to be free from excessive force during an arrest.

80. The amount of force used against Mr. Guerrero by Officer Escalona and other officers was unreasonable and excessive under the circumstances.

81. Officer Escalona was acting under color of state law as a police officer when he committed such acts.

### COUNT V: STATE LAW FALSE ARREST/IMPRISONMENT – CITY OF CORAL GABLES, FLORIDA

82. Mr. Guerrero re-alleges the allegations contained in paragraphs 1-59 of this Complaint.

83. Mr. Guerrero brings this action against the City of Coral Gables, Florida for state law false arrest and/or false imprisonment, pursuant to its waiver of sovereign immunity under Florida Statute 768.28.

84. The City of Coral Gables, via Officers Izquierdo and Escalona, unlawfully detained and deprived Mr. Guerrero of his liberty.

85. The City of Coral Gables, via Officers Izquierdo and Escalona, intentionally detained Mr. Guerrero under circumstances that were unreasonable and unwarranted.

86. The City of Coral Gables police officers did not have probable cause to arrest Mr. Guerrero.

87. Mr. Guerrero suffered harm as a result of his unlawful arrest and imprisonment.

88. Pursuant to the City of Coral Gables waiver of sovereign immunity under Florida Statute 768.28, it is liable to Mr. Guerrero for his injuries caused by Officers Izquierdo and Escalona.

89. Mr. Guererero has complied with the presuit notice requirement in Florida Statute 768.28.

WHEREFORE, Plaintiff, Benjamin Guerrero, demands judgment for his economic and noneconomic damages, attorney's fees, the cost of prosecuting this action, and any other relief this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Mr. Guerrero demands a jury trial of all issues so triable as of right by a jury.

DATED: March 24, 2021.

> Hilton Napoleon, II, Esq., FBN 17593
> RASCO KLOCK  PEREZ NIETO
> 2555 Ponce de Leon Blvd., Suite 600
> Coral Gables, Florida 33134
> Telephone: 305.476.7100
> Facsimile: 305.476.7102
> hnapoleon@rascoklock.com
>
> *Counsel for the Plaintiff, Benjamin Guerrero*
>
> By: /s/ *Hilton Napoleon, II*
>         Hilton Napoleon, II