**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-21122-BLOOM/Otazo-Reyes

BENJAMIN GUERRERO,

    Plaintiff,

v.

CITY OF CORAL GABLES, a political
subdivision of the State of Florida,
LEANDRO IZQUIERDO, a resident of the
State of Florida, and ALVARO ESCALONA,
a resident of the State of Florida,

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants City of Coral Gables ("City"), Leonardo Izquierdo ("Izquierdo"), and Alvaro Escalona's ("Escalona") (collectively, "Defendants") Motion for Final Summary Judgment, ECF No. [82] ("Motion"), along with their corresponding Amended Statement of Material Facts, ECF No. [86] ("SMF"). Plaintiff Benjamin Guerrero ("Plaintiff" or "Guerrero") filed a Response in Opposition to the Motion for Final Summary Judgment, ECF No. [98] ("Response"), and his Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment, ECF No. [97] ("Response to SMF"). Defendants filed a Reply to Plaintiff's Response, ECF No. [102] ("Reply"), and their Reply Statement of Material Facts, ECF No. [103] ("Reply to SMF"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

On March 24, 2021, Plaintiff initiated this action against Defendants asserting five counts: Fourth Amendment Violation – False Arrest against Izquierdo ("Count I"); Fourth Amendment Violation – False Arrest against Escalona ("Count II"); Fourth Amendment Violation – Excessive Force against Izquierdo ("Count III"); Fourth Amendment Violation – Excessive Force against Escalona ("Count IV"); and State Law False Arrest/Imprisonment against the City ("Count V"). *See* ECF No. [1].[1]

In the Motion, Defendants request that the Court grant summary judgment in their favor and against Plaintiff because Izquierdo and Escalona (collectively, "Officers") are entitled to qualified immunity. *See* ECF No. [82]. Defendants argue that the Officers had probable cause or arguable probable cause to arrest Plaintiff, the Officers did not violate Plaintiff's Fourth Amendment rights, and the Officers did not violate a clearly established law. Further, Defendants argue that the City cannot be liable for false arrest or imprisonment because the Officers had probable cause to arrest Plaintiff and the City is statutorily immune from liability for Plaintiff's false arrest or false imprisonment claim under Fla. Stat. § 509.143(3).

Plaintiff responds that the Officers are not entitled to qualified immunity when viewing the disputed facts in the light most favorable to Plaintiff. *See* ECF No. [98]. Further, the amount of force that the Officers used was unreasonably excessive. Lastly, the City is liable because there was no probable cause to arrest Plaintiff, and Fla. Stat. § 509.143(3) does not apply to municipalities.

---

[1] Notably, Plaintiff's claims against the Officers are based on federal law, but Plaintiff's claim against the City is based on Florida state law.

## II. MATERIAL FACTS

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff planned to meet a friend at Hillstone located at 201 Miracle Mile in Coral Gables, Florida, after work on Friday, November 16, 2018. ECF Nos. [86] ¶ 1, [97] ¶ 1. Hillstone is primarily a restaurant serving food and beverages, but also has a large and popular bar located to one side. ECF Nos. [86] ¶ 3, [97] ¶ 3. On the evening of November 16, 2018, the Officers were on Hillstone's premises working as off-duty police officers at Hillstone's request. ECF Nos. [86] ¶ 6, [97] ¶ 6. The Officers were in full police uniform. ECF Nos. [86] ¶ 7, [97] ¶ 7.

Guerrero arrived at Hillstone between 6:00 p.m. and 6:30 p.m. where he met his friend, Mr. Arrue, for drinks. ECF Nos. [86] ¶ 8, [97] ¶ 8. Guerrero and Mr. Arrue each had a cocktail together for about half an hour before Guerrero joined three women he knew – Tara Banks ("Banks"), Olivia Minnis, and Maria Minnis ("Minnis") – for drinks at the bar in Hillstone. ECF Nos. [86] ¶ 8, [97] ¶ 8. Guerrero and the three women remained at the bar from approximately 7:00 p.m. to 10:00 p.m. ECF Nos. [86] ¶ 9, [97] ¶ 9. After joining the three women at the bar, Guerrero told the bartender to keep the tab open. ECF Nos. [86] ¶ 10, [97] ¶ 10. Guerrero does not know how many drinks he and his party ordered or how many drinks he had consumed that evening at Hillstone. ECF Nos. [86] ¶ 12, [97] ¶ 12. Defendants claim that Guerrero's receipt from Hillstone shows fifteen (15) alcoholic beverages were ordered on his tab, including a martini, sparkling wine, red wine, and white wine. ECF No. [86] ¶ 13. Plaintiff claims that fifteen (15) alcoholic beverages were "placed" on Guerrero's tab, and Minnis testified that Hillstone manipulated her and Guerrero's tab to make it seem like Mr. Guerrero ordered more drinks. ECF No. [97] ¶ 13.

Defendants and Plaintiff dispute whether Hillstone cut-off alcohol service to Banks or Guerrero's entire party. ECF Nos. [86] ¶ 17, [97] ¶ 17. However, the parties agree that Guerrero claims he wanted to speak to a manager because he believed that Banks did not appear intoxicated, and he wanted to know what Hillstone's alcohol policy was. ECF Nos. [86] ¶ 19, [97] ¶ 19. Banks did not understand why she was being cut-off, and the party asked to speak to the manager. ECF Nos. [97] ¶ 82, [103] ¶ 82. Hillstone Assistant Manager Josh Morris ("Morris") approached and informed Guerrero and his party that it was Hillstone's policy not to serve alcohol to the point of intoxication. ECF Nos. [86] ¶ 20, [97] ¶ 20.

The parties dispute whether the conversation between Guerrero and Morris escalated quickly. ECF Nos. [86] ¶ 21, [97] ¶ 21. Defendants claim that it did escalate quickly. ECF No. [86] ¶ 21. Guerrero claims that it did not. ECF No. [97] ¶ 21. The parties dispute whether Guerrero used profanity toward Morris. ECF Nos. [86] ¶ 23, [97] ¶ 23. The parties also dispute whether Hillstone personnel informed Escalona of Guerrero's encounter with Morris and called Escalona to the area to stand by. ECF Nos. [86] ¶ 28, [97] ¶ 28. The parties dispute whether the Officers remained nearby throughout Guerrero's verbal exchange with Morris. ECF Nos. [86] ¶ 29, [97] ¶ 29. The parties agree that at the conclusion of the conversation, Morris left the area. ECF Nos. [97] ¶ 86, [103] ¶ 86.

In the surveillance video, Hillstone General Manager Nicole Hurst ("Hurst") is seen communicating with Officer Escalona while Guerrero and Mr. Morris are engaging in their verbal interaction. ECF Nos. [86] ¶ 35, [97] ¶ 35. The parties dispute what Hurst told Escalona. ECF Nos. [86] ¶ 36, [97] ¶ 36. The parties agree, however, that Hurst did not tell anyone that Guerrero and his party were leaving. ECF Nos. [97] ¶ 68, [103] ¶ 68. Hurst never asked Guerrero to leave the

restaurant. ECF Nos. [97] ¶ 71, [103] ¶ 71. Hurst did not give any instructions to the Officers to remove Guerrero from the restaurant. ECF Nos. [97] ¶ 68, [103] ¶ 68.

Izquierdo meandered his way through the women and approached Guerrero. ECF Nos. [97] ¶ 91, [103] ¶ 91. The parties dispute whether Guerrero was getting "louder and louder." ECF Nos. [86] ¶ 40, [97] ¶ 40. The parties agree that Izquierdo raised a finger to his mouth to get Guerrero to lower his voice. ECF Nos. [86] ¶ 42, [97] ¶ 42.[2] The parties also agree that it is Guerrero's position that Officer Izquierdo arbitrarily made a shushing gesture in Plaintiff's direction for no reason. ECF Nos. [86] ¶ 43, [97] ¶ 43. The parties further agree that it is Guerrero's position that he "wasn't saying anything to anyone that worked [at Hillstone]" when Izquierdo ordered him to be quiet. ECF Nos. [86] ¶ 43, [97] ¶ 43.

The parties dispute how Guerrero otherwise reacted to the Officers. ECF Nos. [86] ¶ 44, [97] ¶ 44. Defendants claim that Guerrero's reaction to being quieted was to aggressively come toward Izquierdo, yelling profanities and pointing a finger at his face. ECF No. [86] ¶ 44. Plaintiff claims that he never raised his voice. ECF No. [97] ¶ 44.

The parties agree that eventually Izquierdo attempted to grab Guerrero to detain him. ECF Nos. [86] ¶ 48, [97] ¶ 48.[3] The parties dispute as to what caused the ensuing physical struggle. ECF Nos. [86] ¶ 49; [97] ¶ 49. Defendants claim that Guerrero physically resisted Izquierdo's touch causing Escalona to intervene and assist Izquierdo as a brief physical struggle ensued. ECF No. [86] ¶ 49. Plaintiff claims he never resisted Izquierdo's unlawful arrest, and any physical struggle that ensued was solely caused by Izquierdo and Escalona's false arrest. ECF Nos. [97]

---

[2] It should be noted that while Plaintiff disputes the paragraph in the SMF containing this fact, Plaintiff does not expressly dispute that Izquierdo raised his finger. *See* ECF No. [97] ¶ 42. The Court further notes that Plaintiff gave a statement where he agreed that Izquierdo raised his finger to his mouth. *See* ECF No. [81-8] at 30.

[3] Plaintiff does not dispute that Izquierdo grabbed Plaintiff to detain him, but Plaintiff disputes that Izquierdo grabbed Plaintiff to detain him *because Plaintiff was a safety risk*. *See* ECF No. [97] ¶ 48.

¶ 49. The parties agree that once the Officers gained control of Guerrero, the Officers escorted him by the arm out of the restaurant to the outside patio area where they handcuffed him. ECF Nos. [86] ¶ 54, [97] ¶ 54.

### III. LEGAL STANDARD

#### A. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed

from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of demonstrating the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-moving party neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### B. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *See id.* at 1233.

"An official who asserts entitlement to qualified immunity must first establish that she or he was acting within the scope of his discretionary authority." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). "Once the official makes that showing, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Overcoming the official's qualified-immunity defense requires a plaintiff to establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010)). "[W]hen conducting a qualified immunity analysis, district courts must take the facts in the light most

favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

### C. Probable Cause

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed or was committing a crime." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007); *see also Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause." *See Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998) (citing *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)). "An officer, however, need not take every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person. Furthermore, once an officer makes an arrest based upon probable cause, he need not investigate independently every claim of innocence." *See id.* at 1436 (citations and internal quotation marks omitted). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega*, 85 F.3d at 1525 (quoting *Marx*, 905 F.2d at 1506); *see also Rankin*, 133 F.3d at 1436 ("Probable cause is 'judged not with clinical detachment but with a common sense view to the realities of normal life.'" (quoting *Marx*, 905 F.2d at 1506)).

> But even in the absence of actual probable cause, the arresting officer will be entitled to qualified immunity if he shows at least "arguable probable cause to believe that a person is committing a particular public offense." [*Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998).] We ask whether "reasonable

9

> officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *See id.* at 1382. An officer's "underlying intent or motivation" is irrelevant. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). . . . The existence of arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). But "[a]rguable probable cause does not require an arresting officer to prove every element of a crime." *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001). . . . "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). "Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1320 (11th Cir. 2016).

*Longino v. Henry Cty., Ga.*, 791 F. App'x 828, 832-33 (11th Cir. 2019).

## IV. DISCUSSION

### a. Counts I and II

Defendants first argue that the Officers are entitled to qualified immunity with regard to Counts I and II for false arrest. *See* ECF No. [82] at 5-12. The Officers were acting under the scope of their discretionary authority by acting under the color of state law as police officers. *See id.* at 6-7. As such, Plaintiff bears the burden of demonstrating that qualified immunity should not apply to bar Plaintiff's claims. *See id.* at 6. Under the totality of the circumstances, the Officers had probable cause or arguable probable cause to arrest Plaintiff for disorderly conduct on the premises of an establishment under Fla. Stat. § 509.143(2), the Officers did not violate Plaintiff's Fourth Amendment rights, and the Officers are entitled to qualified immunity. *See id.* at 7-12 (citing *Epstein v. Toys-R-Us Delaware, Inc.*, 277 F. Supp. 2d 1266, 1270 (S.D. Fla. 2003), *aff'd sub nom.*, 116 F. App'x. 241 (11th Cir. 2004)). Further, even if Plaintiff can establish that the Officers deprived Plaintiff of his Fourth Amendment rights by arresting him without probable cause or arguable probable cause, Plaintiff cannot establish that his arrest violated a clearly established law.

Case 1:21-cv-21122-BB Document 104 Entered on FLSD Docket 08/08/2022 Page 11 of 19

Case No. 21-cv-21122-BLOOM/Otazo-Reyes

*See id.* at 16-18. Rather, Fla. Stat. § 509.143(2) permits the arrest of individuals engaging in disorderly conduct in a licensed establishment without a warrant. *See id.* at 17.

Plaintiff agrees that the Officers were acting within their discretionary authority as police officers, *see* ECF No. [98] at 6, but argues that the Officers are not entitled to qualified immunity, *see id.* at 6-14. Plaintiff submits that he has set forth sufficient evidence that he was not acting in a disorderly manner to give the Officers probable cause or arguable probable cause to arrest him. *See id.* at 8-9. As such, there is sufficient evidence indicating that the Officers violated Plaintiff's Fourth Amendments rights by arresting him without probable cause or arguable probable cause. Further, Defendants' argument that the Officers did not violate a clearly established law is meritless because Fla. Sta. § 509.143(2) requires the Officers to have "probable cause to believe [Plaintiff] violated s. 877.03 on the premises of a licensed establishment and, in the course of such violation, created a threat to the life or safety of the person or others." Fla. Stat. § 509.143(2).[4] Plaintiff reiterates that because there is sufficient evidence that there was no probable cause or arguable probable cause, Defendants cannot rely on Fla. Sta. § 509.143(2). *See* ECF No. [98] at 12-14. Plaintiff next argues that Defendants' reliance on *Epstein*, 277 F. Supp. 2d at 1270, is unpersuasive because in that case, the court concluded that summary judgment was appropriate because the plaintiff refused to leave the premises and probable cause existed for the officers to arrest the plaintiff. The court focused on the plaintiff's interference with the police investigation and refusal to obey the officers' lawful request to leave the premises as evidence of probable cause.

---

[4] Fla. Stat. § 877.03 states as follows: "Breach of the peace; disorderly conduct.—Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."

*See id.* at 1273. In contrast, in this case, there is no evidence that Plaintiff interfered with a police investigation or refused to leave the premises. *See* ECF No. [98] at 11.

The Court agrees with Plaintiff. As a threshold matter, both parties agree that the Officers were acting in their discretionary authority. The issue is whether qualified immunity applies to bar Plaintiff's claims against the Officers. As noted above, "[o]vercoming the official's qualified-immunity defense requires a plaintiff to establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." *Alcocer*, 906 F.3d at 951.

In this case, when viewing the evidence in the light most favorable to Plaintiff as the Court must, *see Robinson*, 415 F.3d at 1257, it appears that Plaintiff was not engaged in any disorderly conduct. Plaintiff's statement and Minnis' deposition suggest that Plaintiff never escalated the situation and never caused any disruption or disturbance. *See* ECF Nos. [81-8] at 15-16, [96-1] at 11, 16, 18-19.[5] To the extent that Defendants claim the Court can look to the surveillance video and "accept the video's depiction instead of Plaintiff's [and Minnis'] account," ECF No. [82] at 12 n.5 (quoting *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1314 (11th Cir. 2010)), the surveillance video fails to clearly show Plaintiff's "animated behavior." *See* ECF No. [10] at 22:03-22:07. The surveillance video does not have any sound to establish that Plaintiff raised his voice or used profanity. *See id.* Most of the patrons do not seem to notice Plaintiff before his arrest, indicating that he did not raise his voice. *See id.* As such, the video does not "obviously contradict" Plaintiff's version of the facts, and the Court is not required to disregard Plaintiff's representation

---

[5] Defendants argue in a footnote in their Reply that Minnis testified that Plaintiff engaged in a debate with Morris in "an animated fashion." ECF No. [102] at 8 (citing ECF No. [96-1] at 17). However, Minnis' testimony only suggests that Plaintiff "kept repeating that [*sic*] over and over that nobody was intoxicated . . . . And it was kind of like a debate." ECF No. [96-1] at 17. When viewing the testimony in the light most favorable to Plaintiff, that testimony does not establish that Plaintiff engaged in a debate in "an animated fashion" to give rise to probable cause or arguable probable cause.

of the events. *Pourmoghani-Esfahani*, 625 F.3d at 1315. Further, any evidence or testimony indicating that Plaintiff did cause a disruption or a disturbance, such as the testimony of other witnesses, does not negate the existence of Plaintiff's evidence to the contrary. Thus, when viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that there was probable cause or arguable probable cause. *See Robinson*, 415 F.3d at 1257.

To the extent that Defendants rely on *Epstein*, 277 F. Supp. 2d at 1270, to argue that the Court can make a factual determination on probable cause or arguable probable cause, the *Epstein* case is distinguishable. In that case, it was undisputed that the plaintiff refused to obey the lawful requests of police officers. *See id.* at 1273. The court stated that "even when viewing [p]laintiff's testimony in the light most favorable to him, it is abundantly clear that *based on [p]laintiff's own testimony and version of events*, Officers Coldros and Milenkovic had probable cause to arrest [the plaintiff]." *Id.* (emphasis added) As such, summary judgment was appropriate because there was no evidence for which a reasonable jury could find for the plaintiff. In contrast, in this case, Plaintiff disputes Defendants' version of the events. Plaintiff claims that he did not raise his voice or engage in any disorderly conduct. Thus, when viewing the evidence in the light most favorable to Plaintiff, the Officers may not have had probable cause or arguable probable cause to arrest Plaintiff.[6]

Further, Plaintiff is also persuasive in arguing that there is sufficient evidence that the Officers violated a clearly established law because Fla. Sta. § 509.143(2) requires Officers to have "probable cause to believe [Plaintiff] violated s. 877.03 on the premises of a licensed establishment

---

[6] Defendants belie the court's ruling in *Epstein* by claiming that there were "many facts in dispute" in *Epstein* and the court nonetheless concluded that summary judgment was appropriate. *See* ECF No. [102] at 7. Defendants' pincite indicates that while certain immaterial facts were in dispute, the material fact of whether the record showed that the officers had probable cause was not in dispute in *Epstein*. *See* 277 F. Supp. 2d at 1273-74. In contrast, in this case, the material fact of whether the Officers had probable cause is in dispute.

13

and, in the course of such violation, created a threat to the life or safety of the person or others." Fla. Stat. § 509.143(2). As discussed above, there is sufficient evidence to show that there was no probable cause or arguable probable cause to indicate that Plaintiff created a breach of peace or engaged in disorderly conduct that created a threat to the life and safety of others. Without probable cause, the jury could find that Fla. Stat. § 509.143(2) is inapplicable, and that the Officers violated Plaintiff's clearly established right to be free from unreasonable searches and seizures. *See, e.g.*, *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11 Cir. 1998) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment.").

In sum, when viewed in the light most favorable to Plaintiff, Plaintiff's evidence suggests that there was no probable cause or arguable probable cause. As such, Defendants' request for summary judgment on this matter is denied.

### b. Counts III and IV

Defendants next argue that the Officers are entitled to qualified immunity with regard to Counts III and IV for excessive force. *See* ECF No. [82] at 12-16. Defendants submit that the quantum of force used by the Officers is insufficient to prevail on a claim for excessive force as a matter of law. Plaintiff suffered no physical injury, and the quantum of force used was *de minimis* and reasonable. *See id.* at 12-13. Further, Defendants aver that Plaintiff's excessive force claims are derivative of his false arrest claims, and the Eleventh Circuit has held that "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Id.* at 15 (quoting *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006)). As such, Plaintiff's excessive force claims should be dismissed based on Plaintiff's false arrest claims. Lastly, Defendants argue that even if the Officers violated Plaintiff's constitutional

14

rights, the Officers did not violate a clearly established law. *See id.* at 16-18. Defendants point out that Fla. Stat. § 776.05(1) authorizes officers to use any force "[w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest." Fla. Stat. § 776.05(1).

Plaintiff responds that the use of force was objectively unreasonable and resulted in a violation of his Fourth Amendment rights to be free from unreasonable searches and seizures, which encompasses the right to be free from excessive force. *See* ECF No. [98] at 14. Plaintiff submits that the Officers suddenly grabbed Plaintiff around his waist, threw him off the barstool, and violently slammed him against the bar. *See id.* at 15. Such use of force was not *de minimis*. Further, it was unreasonable given that Plaintiff did not commit a crime, did not pose an immediate threat to the Officers or any bystanders, and did not attempt to resist arrest. *See id.* In addition, Plaintiff argues *Bashir* is inapposite because his claims of excessive force are based on the quantum of force used under the circumstances and not derivative of his unlawful arrest claims. *See id.* at 16.

The Court agrees with Plaintiff. Plaintiff has presented sufficient evidence through his statement that the quantum of force was not *de minimis*. *See* ECF No. [81-8] at 35. When viewing the video in the light most favorable to Plaintiff, it further suggests that the quantum of force used in this instance was not *de minimis*. *See* ECF No. [10] at 22:03-22:07. Considering such evidence and drawing all reasonable inferences in favor of Plaintiff as the Court must at this stage of the proceedings, the Court cannot find as a matter of law that the Officers did not use excessive force.

In addition, Plaintiff correctly argues that *Bashir* is not applicable. In *Bashir*, the plaintiff's excessive force claim was predicated on the claim that the officers did not have probable cause to arrest the plaintiffs. *See* 445 F.3d at 1332. The Eleventh Circuit held that "[a]n excessive force

claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (i.e., non-de minimis force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest. When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Id.* In this case, although Defendants argue that the excessive force claim is predicated on the allegation that the Officers lacked the power to lawfully arrest him, and not based on the quantum of force used to arrest Plaintiff, the Complaint clearly states that the excessive force claims are based on the unreasonable "amount of force used." ECF No. [1] ¶¶ 75, 80. Plaintiff has set forth evidence regarding the quantum of force used through the video. *See* ECF No. [10] at 22:03-22:07. It is evident, therefore, that the excessive force claims are separate claims based on the quantum of force rather than whether the Officers had the power to make an arrest.

Further, to the extent that Defendants argue that Plaintiff admitted during his deposition that his excessive force claims are derivative of his false arrest claims, the Court is not persuaded. Defendants point out a portion of Plaintiff's deposition testimony where Plaintiff stated "[i]f an officer has no right to put their hands on someone, any force is excessive." *See* ECF No. [83-1] at 3-4. However, that testimony is not equivalent to Plaintiff testifying that the force used was *de minimis* or that the excessive force claims are derivative of his false arrest claims. Plaintiff appears to be testifying about the state of the law on excessive force claims, rather than testifying about the quantum of force used in this case. Plaintiff also does not appear to expressly concede that his excessive force claims are based solely on his false arrest claims grounded in the lack of probable cause or arguable probable cause. Rather, his testimony suggests that his excessive force claims are complaints based on the "force incident to [his] arrest." *Id.* at 3-4.

Lastly, Defendants' argument is unpersuasive that, even if the Officers violated Plaintiff's constitutional rights, the Officers did not violate a clearly established law. Fla. Stat. § 776.05(1) authorizes an officer to use any force "[w]hich he or she *reasonably believes* to be necessary to defend himself or herself or another from bodily harm while making the arrest." Fla. Stat. § 776.05(1) (emphasis added). Viewing the evidence in the light most favorable to Plaintiff, the evidence suggests that it was unreasonable for the Officers to believe that it was necessary to use such force. As such, the jury could find that Fla. Stat. § 776.05(1) is inapplicable, and that the Officers violated Plaintiff's clearly established right to be free from unreasonable searches and seizures, including the excessive use of force.

### c. Count V

Defendants argue that the City cannot be held liable for state law false arrest/imprisonment because the undisputed facts show that the Officers had probable cause to arrest Plaintiff and the City is statutorily immune from liability pursuant to Fla. Stat. § 509.143(3). *See* ECF No. [82] at 18-21.

Plaintiff responds that there was no probable cause to arrest Plaintiff. *See* ECF No. [98] at 17-19. Plaintiff further submits that Defendants cannot rely on Fla. Stat. § 509.143(3) because the statute only provides immunity for an "operator" or "law enforcement officer" for state false arrest claims, not municipalities.

For the reasons stated above, the Court agrees with Plaintiff to the extent that there is sufficient evidence showing that there was no probable cause or arguable probable cause for Plaintiff's arrest. Plaintiff's own statement and the video, when viewed in the light most favorable to Plaintiff, suggest that Plaintiff was not creating a threat to the life or safety of others. Therefore, the Court cannot determine at this stage whether Fla. Stat. § 509.143(3) would have provided

immunity for the Officers, if Plaintiff had asserted a state law false arrest claim against the Officers.[7]

However, the material issue in Count V is whether the City – not the Officers – is entitled to immunity under Fla. Stat. § 509.143(3). The statute provides immunity from state law false arrest/imprisonment claims as follows:

> An operator or a law enforcement officer who detains a person under subsection (1) or makes an arrest under subsection (2) is not civilly or criminally liable for false arrest, false imprisonment, or unlawful detention on the basis of any action taken in compliance with subsection (1) or subsection (2).

Fla. Stat. § 509.143(3).

In this case, if the jury finds in favor of Defendants on the issue of probable cause, then the Officers are immune from any state law claims for false arrest. If there is no valid state law claim against the Officers for false arrest, then there can be no basis for a vicarious liability claim against the City for state law false arrest. As such, the operative effect of Fla. Stat. § 509.143(3) – which immunizes law enforcement officers from false arrest claims if the requirements of Fla. Stat. § 509.143(2) are met – is that the City is immunized from vicarious liability claims based on state law false arrest claims. Without an underlying state law false arrest claim against the Officers, there cannot be a claim for vicarious liability against the City. Thus, while the text of Fla. Stat. § 509.143(3) does not include municipalities, the operative effect of the statute immunizes municipalities from any vicarious liability claim by immunizing law enforcement officers who comply with Fla. Stat. § 509.143(2).

Defendants' Motion is denied. Defendants may set forth evidence and argument at trial to persuade the jury that the Officers had probable cause that Plaintiff was engaging in disorderly conduct and creating a threat to the life and safety of others. If the jury finds in favor of Defendants

---

[7] Plaintiff did not assert any state law false arrest claims against the Officers.

on this matter, then the City will be immune from Plaintiff's vicarious liability claim because there will be no basis for the vicarious liability claim. If, however, the jury finds in favor of Plaintiff on this matter, then the City will not be immune from Plaintiff's vicarious liability claim because Fla. Stat. 509.143(2) would not apply to immunize the Officers and the City can be held vicariously liable for its employees acting in the scope of their employment. *See City of Miami v. Simpson*, 172 So. 2d 435, 437 (Fla. 1965) (allowing vicarious liability claims against municipalities based on the conduct of their employees acting in the scope of employment).

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion, **ECF No. [82]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 8, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record